Benjamin D. Van Horn (SBN 332198)
bvanhorn@ssmklaw.com
Adam J. Sinton (*pro hac vice* forthcoming)
asinton@ssmklaw.com
Joseph J. Minock (*pro hac vice* forthcoming)
jminock@ssmklaw.com
**SINTON SCOTT MINOCK & KEREW**
1550 Market Street, Suite 400
Denver, CO 80202
Telephone: (702) 738-9894

Shane M. Biornstad - Bar No. 250202
SBiornstad@shulmanbastian.com
**SHULMAN BASTIAN FRIEDMAN BUI & O'DEA LLP**
100 Spectrum Center Drive, Suite 600
Irvine, California 92618
Telephone: (949) 340-3400
Facsimile: (949) 340-3000

Attorneys for HEALTH CARE SERVICE CORPORATION, a Mutual Legal Reserve Company, Doing Business in Oklahoma as BLUE CROSS BLUE SHIELD OF OKLAHOMA

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

| | |
|---|---|
| HEALTH CARE SERVICE CORPORATION, a Mutual Legal Reserve Company, Doing Business in Oklahoma as BLUE CROSS BLUE SHIELD OF OKLAHOMA,<br><br>Plaintiff,<br><br>vs.<br><br>CODEMAX MEDICAL BILLING; 28's REHAB; 360 INTEGRATED RECOVERY INC.; 4 HEALTHY LIVING DETOX, INC.; 4 SEASON DETOX AND RECOVERY HOUSE INC.; A1 TREATMENT CENTER; ALPHA RECOVERY CENTER, INC.; ALTITUDE RECOVERY COMMUNITY LLC; ALTITUDE RECOVERY COMMUNITY NO. 2, LLC; ALTUS REHAB LLC; AME HEALTHCARE GROUP LLC d/b/a VITA NOVA AT NEWPORT BAY; AMERICAN RECOVERY CENTER; | Case No.<br><br>**COMPLAINT**<br>**(1) Violations of 18 U.S.C. § 1962(c)**<br>**(2) Violations of 18 U.S.C. § 1962(d)**<br>**(3) Fraud & Fraudulent Concealment**<br>**(4) Unjust Enrichment/Restitution**<br>**(5) Money Had & Received** |

ANANDA, INC. d/b/a ANANDA TREATMENT BEHAVIORAL HEALTH AND WELLNESS CENTER; ANSUVA INC.; AYA REHAB CENTER LLC; BELIEVE DETOX CENTER INC.; CA DRUG DETOX LLC; CALIFORNIA WELLNESS RETREAT, INC.; CASA LEONA RECOVERY CENTER INC.; CELEBRATED CONSULTING INC.; CHC BEHAVIORAL HEALTH LLC; CLEAR CONSCIENCE TREATMENT CENTER, LLC; COMFORT RECOVERY TREATMENT CENTER LLC; CONNECTED RECOVERY INC.; DELUXE TREATMENT CENTER INC.; EAGLE RECOVERY; EHG ENTERPRISES INC.; ENCINO RECOVERY INC.; ESSENCE HEALTH CARE LLC; FREEDOM DRUG AND ALCOHOL RECOVERY INC.; GARRET RECOVERY CENTER; GEVS RECOVERY CENTER; GLENDALE LUXURY REHAB LLC; GRANADA HILLS TREATMENT CENTER LLC; HIGHERVISION GH INC.; HOPE DETOX CENTER LLC; INSPIRE RECOVERY CENTER INC.; INTEGRITY RECOVERY CENTER; JOURNEY OF A NEW LIVING; LA WELLNESS HOME INC.; LAKERIDGE RECOVERY CENTER; LANDALE RECOVERY CENTER; LH BLUE SKY, INC.; LION RECOVERY; LNA REALTY; MEDICHEX, INC. d/b/a LIFT OFF RECOVERY; NEW BREATH RECOVERY INC.; NEW LIFE RECOVERY CENTER; NEW LIFE, INC.; OASIS DETOX INC.; OASIS REHABILITATION CENTER INC.; PURE ADDICTION TREATMENT; REGGIE'S RECOVERY, LLC; RESILIENT RECOVERY TREATMENT CENTER; RISE IN GLENDALE SOBRIETY CENTER, INC.; RISING LOTUS RECOVERY LLC; RITZ RECOVERY INC.; SADAG TREATMENT SOLUTIONS, LLC; SAINT ANGEL RECOVERY CENTER, INC.; SAINT LAWRENCE RECOVERY; SEQUOIA RECOVERY CENTER; SHADOW HILLS RECOVERY INC.; SOUL DETOX

AND RECOVERY INC.; STAR CITY RECOVERY INC.; SUN AND MOON REHABILITATION; TARZANA RECOVERY CENTER; TRANQUILITY RECOVERY CENTER, INC.; TRINITY HEALTH PARTNERS LLC; UPLIFT RECOVERY CENTER LLC; VANITY DETOX CENTER INC.; VANITY WELLNESS CENTER INCORPORATED; WILLPOWER RECOVERY CENTER, INC.; WISH RECOVERY HOUSE LLC,

Defendants.

Plaintiff Health Care Service Corporation, a Mutual Legal Reserve Company, doing business in Oklahoma as Blue Cross and Blue Shield of Oklahoma ("HCSC" or "BCBSOK"), brings this Complaint against Defendant CodeMax Medical Billing ("CodeMax"), a revenue cycle management and billing company that tailors its services towards behavioral health providers, and 72 Defendant behavioral health providers who hired CodeMax as their billing agent. These Defendant providers are identified below in paragraphs 7 through 78 and are referred to herein collectively as the "Providers" and each individually as a "Provider."

## INTRODUCTION

1. CodeMax describes itself as "the authority in behavioral health revenue" and touts its "all-in-one revenue cycle management platform to run [providers'] entire billing operation . . . from verification to reimbursement." CodeMax told the Defendant Providers that it would "increase [their] revenue and streamline [their] workflow by leveraging [CodeMax's] proven revenue cycle management system."

2. In reality, CodeMax increased the Providers' revenue (and its own) by executing a sweeping fraudulent scheme, which involved: (i) **manufacturing the patients**—identifying, recruiting, creating, or brokering members of two particular Individual Exchange Qualified Health Plans and delivering them to the

SHULMAN BASTIAN FRIEDMAN BUI & O'DEA LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

Providers' facilities in California; (ii) **manufacturing the claims**—obtaining authorizations based on generic scripts, concealing the source of the patients, identifying treatments that were not (and in many cases could not have been) provided, and listing fake charges Defendants never intended to collect from patients that were inflated solely to extract as much as possible from the QHPs (defined below); and (iii) **maximizing illicit profits**—identifying, testing, and exploiting opportunities to manipulate reimbursements and obtain tens of millions of extra dollars.

3. CodeMax and the Providers executed this scheme to obtain over $20 million more than they should have (even assuming claims were otherwise payable) from HCSC's Oklahoma individual exchange qualified health plans.

4. HCSC brings this action and alleges claims for: (i) violations of 18 U.S.C. § 1962(c) against CodeMax; (ii) violations of 18 U.S.C. § 1962(d) against the Providers; (iii) fraud and fraudulent concealment against CodeMax and the Providers; (iv) unjust enrichment/restitution against CodeMx and the Providers; and (v) money had and received against CodeMax and the Providers.

## PARTIES

5. Plaintiff is an Illinois mutual legal reserve company, which has its principal place of business in Illinois. As it pertains to Oklahoma, HCSC offers Oklahoma-based insurance plans (like the plans at issue here) as Blue Cross and Blue Shield of Oklahoma, an unincorporated division of HCSC.

6. Defendant CodeMax Medical Billing is a California general corporation with its principal office located in Van Nuys, California. CodeMax may be served with process through its Registered Agent, David Darzian, at 6656 Peach Avenue, in Van Nuys, California.

7. Defendant 28's Rehab is a California professional corporation with its principal office located in Burbank, California. 28's Rehab may be served with

process through its Registered Agent, Eduard Gabrielyan, at 2743 N. Keystone Street, in Burbank, California.

8. Defendant 360 Integrated Recovery Inc. ("360 Recovery") is a California general corporation with its principal office located in Studio City, California. 360 Recovery may be served with process through its Registered Agent, Hala Aziz, at 5449 Woodman Avenue, in Sherman Oaks, California.

9. Defendant 4 Healthy Living Detox, Inc. ("4 Healthy Living") is a California general corporation with its principal office located in Tarzana, California. 4 Healthy Living may be served with process through its Registered Agent, Jack Oganyan, at 15306 Devonshire Street, Suite 200, in Mission Hills, California.

10. Defendant 4 Season Detox and Recovery House Inc. ("4 Season") is a California general corporation with its principal office located in Simi Valley, California. 4 Season may be served with process through its Registered Agent, Arsen Saroyan, at 3174 Evelyn Avenue, in Simi Valley, California.

11. Defendant A1 Treatment Center ("A1 Treatment") is a California general corporation with its principal office located in Van Nuys, California. A1 Treatment may be served with process through its Registered Agent, Fred Hairabidian, at 13604 Gault Street, in Van Nuys, California.

12. Defendant Alpha Recovery Center, Inc. ("Alpha Recovery") is a California general corporation with its principal office located in Lancaster, California. Alpha Recovery may be served with process through its Registered Agent, Huijin Kong, at 7316 West Avenue, #D8, in Lancaster, California.

13. Defendant Altitude Recovery Community LLC ("Altitude 1") is a California limited liability company with its principal office located in Newport Beach, California. Based upon filings with the California Secretary of State, Altitude 1's members are the Hugh McCurdy Eaton IV 2015 GST Trust and Waters Opco, LLC. Upon information and belief, the trustee of the former entity

SHULMAN BASTIAN
FRIEDMAN BUI & O'DEA LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

is Hugh Eaton, a California domiciliary residing in San Clemente, California, and the members of Waters Opco, LLC are: (i) Jon Gruber, a California domiciliary residing in Newport Beach, California; (ii) Howard Snyder, a California domiciliary residing in Laguna Beach, California; and (iii) Daniel Gruber, a California domiciliary residing in Valley Village, California. Altitude 1 can be served with process through its Registered Agent, Jon Gruber, at 1133 Camelback Street, #8358, in Newport Beach, California.

14. Defendant Altitude Recovery Community No. 2, LLC ("Altitude 2") is a California limited liability company with its principal office located in Newport Beach, California. Based upon filings with the California Secretary of State, Altitude 2's members are the Hugh McCurdy Eaton IV 2015 GST Trust, Waters Opco, LLC, and Jon Gruber. Upon information and belief, the trustee of the former is Hugh Eaton, a California domiciliary residing in San Clemente, California, and the members of Waters Opco, LLC are: (i) Jon Gruber, a California domiciliary residing in Newport Beach, California; (ii) Howard Snyder, a California domiciliary residing in Laguna Beach, California; and (iii) Daniel Gruber, a California domiciliary residing in Valley Village, California. The third member, Jon Gruber, is (again) a California domiciliary residing in Newport Beach, California. Altitude 2 can be served with process through its Registered Agent, Jon Gruber, at 1133 Camelback Street #8358, in Newport Beach, California.

15. Defendant Altus Rehab LLC ("Altus") is a Wyoming limited liability company with its principal office located in Encino, California. Based upon filings with the California Secretary of State, Altus's members are Zully Holdings LLC and Gill Dayan. Upon information and belief, Gill Dayan is a California domiciliary residing in Tarzana, California, and the sole member of Zully Holdings LLC is Gunel Ilyasova, a California domiciliary residing in Woodland Hills, California. Altus can be served with process through its Registered Agent,

Stephen Newstadt, Esq., at 1801 Century Park East, 24th Floor, in Century City, California.

16. Defendant AME Healthcare Group LLC d/b/a Vita Nova at Newport Bay ("Vita Nova") is a California limited liability company with its principal office located in Sherman Oaks, California. Based upon filings with the California Secretary of State, Vita Nova's members are: (i) Matthew Curry, a California domiciliary residing in Sherman Oaks, California; (ii) Adam Bartholomew, a California domiciliary residing in Huntington Beach, California; and (iii) Eric Marinelli, an Arizona domiciliary residing in Prescott Valley, Arizona. Vita Nova can be served with process through its Registered Agent, California Corporate Agents, Inc. (c/o Chris Johnson), at 2108 N Street, Suite C, in Sacramento, California.

17. Defendant American Recovery Center ("American Recovery") is a former California general corporation with its principal office previously located in Burbank, California. American Recovery may be served with process through its last known Registered Agent, AA Business Consulting, Inc., at 217 E. Alameda Avenue, Suite 307, in Burbank, California.

18. Defendant Ananda, Inc. d/b/a Ananda Treatment Behavioral Health and Wellness Center ("Ananda") is a California general corporation with its principal office located in Shadow Hills, California. Ananda may be served with process through its Registered Agent, Olga M. Skarlato, at 10501 Mary Bell Avenue, in Shadow Hills, California.

19. Ansuva Inc. ("Ansuva") is a California general corporation with its principal office located in Santa Clarita, California. Ansuva may be served with process through its Registered Agent, Angela Sargsyan, at 21127 Alaminos Drive, in Santa Clarita, California.

20. Aya Rehab Center LLC ("Aya Rehab") is a California limited liability company with its principal office located in Canyon Country, California. Based

upon filings with the California Secretary of State, Aya Rehab's sole member is Yelena Manucharyan, a California domiciliary residing in Canyon Country, California. Aya Rehab may be served with process through its Registered Agent, United States Corporation Agents, Inc. (c/o Sandra Menjivar, Jesse Camarena, Arielle Devay, Angie Ramirez, and/or James Sookame), at 500 N. Brand Boulevard, Suite 890, in Glendale, California.

21. Believe Detox Center Inc. ("Believe") is a California general corporation with its principal office located in Granada Hills, California. Believe may be served with process through its Registered Agent, Raymond Gharakhanian, at 17354 Tribune Street, in Granada Hills, California.

22. CA Drug Detox LLC is a California limited liability company with its principal office located in Los Angeles, California. Based upon filings with the California Secretary of State, CA Drug Detox's members are: (i) Tatevik Ekezian, a California domiciliary residing in Los Angeles, California; and (ii) Alexander Gevorgyan, a California domiciliary residing in Los Angeles, California. CA Drug Detox may be served with process through its Registered Agent, Tatevik Ekezian, at 3839 Sunbeam Drive, in Los Angeles, California.

23. California Wellness Retreat, Inc. ("California Wellness") is a California general corporation with its principal office located in Sunland, California. California Wellness may be served with process through its Registered Agent, Khach Law Group, a Professional Corporation, at 126 S. Jackson Street, Suite 203, in Glendale, California.

24. Casa Leona Recovery Center Inc. ("Casa Leona") is a California general corporation with its principal office located in Leona Valley, California. Casa Leona may be served with process through its Registered Agent, Vrezh Isakulyan, at 19006 Chestnut Glen Court, in Santa Clarita, California.

25. Celebrated Consulting, Inc. d/b/a West Valley Detox Treatment ("West Valley") is a California general corporation with its principal office located in

Tarzana, California. West Valley may be served with process through its Registered Agent, Ara Gemilyan, at 18841 Pasadero Drive, in Tarzana, California.

26. Defendant CHC Behavioral Health LLC ("CHC") is a California limited liability company with its principal office located in Encino, California. Based upon filings with the California Secretary of State, CHC's members are: (i) Dr. Mark Honzel, a California domiciliary residing in Beverly Hills, California; and (ii) Matthew Curry, a California domiciliary residing in Encino, California. CHC may be served with process through its Registered Agent, California Corporate Agents, Inc. (c/o Chris Johnson), at 2108 N Street, Suite C, in Sacramento, California.

27. Clear Conscience Treatment Center LLC ("Clear Conscience") is a California limited liability company with its principal office in Chatsworth, California. Based upon filings with the California Secretary of State, Clear Conscience's sole member is Hovsep John Shirikchyan, a California domiciliary residing in Van Nuys, California. Clear Conscience may be served through its Registered Agent, Hovsep John Shirikchayan, at 21958 Vintage Street, in Chatsworth, California.

28. Comfort Recovery Treatment Center LLC ("Comfort Recovery") is a California limited liability company with its principal office in Agoura Hills, California. Based upon filings with the California Secretary of State, Comfort Recovery's sole member is Hovsep Shirikchyan, a California domiciliary who, in Comfort's filings, lists an address in Agoura Hills, California. Comfort Recovery may be served through its Registered Agent, Hovsep Shirikchayan, at 28245 Laura La Plante Drive, in Agoura Hills, California.

29. Connected Recovery Inc. is a California general corporation with its principal office located in Van Nuys, California. Connected Recovery may be served with process through its Registered Agent, Tony R. Tawil, at 14942 Hamlin Street, in Van Nuys, California.

30. Deluxe Treatment Center Inc. ("Deluxe") is a California general corporation with its principal office located in Reseda, California. Deluxe may be served with process through its Registered Agent, Edgar Saribekyan, at 19641 Cantara Street, in Reseda, California.

31. Eagle Recovery ("Eagle") is a California general corporation with its principal office located in Van Nuys, California. Eagle may be served with process through its Registered Agent, Harutyun Shirikchyan, at 6701 Cantaloupe Avenue, in Van Nuys, California.

32. EHG Enterprises Inc. ("EHG") is a California general corporation with its principal office located in Los Angeles, California. EHG may be served with process through its Registered Agent, Garnik Papazian, at 17222 Goya Street, in Granada Hills, California.

33. Encino Recovery Inc. is a California general corporation with its principal office located in Encino, California. Encino Recovery does not identify a Registered Agent in its current filings with the California Secretary of State. Accordingly, Encino Recovery may be served with process through its Chief Executive Officer, Secretary, Chief Financial Officer, and Director, Arsen Davtyan, at 5427 Genesta Avenue, in Encino, California.

34. Essence Health Care LLC ("Essence") is a California limited liability company with its principal office in Sherman Oaks, California. Based upon filings with the California Secretary of State, Essence's members are: (i) Berj Chorabajian, a California domiciliary residing in Sherman Oaks, California; (ii) Nick Feldsher, a California domiciliary residing in Sherman Oaks, California; and (iii) and RAZ.COM LLC (Richard Galvin, a California domiciliary residing in Sherman Oaks, California). Essence may be served with process through its Agent, Berj Chorabajian, at 4226 Sepulveda Boulevard, in Sherman Oaks, California.

35. Freedom Drug and Alcohol Recovery Inc. ("Freedom Recovery") is a California general corporation with its principal office located in Granada Hills, California. Freedom Recovery may be served with process through its Registered Agent, Abit F. Uygan, at 16841 Rinaldi Street, in Granada Hills, California.

36. Garret Recovery Center ("Garret Recovery") is a California general corporation with its principal office located in Agoura Hills, California. Garret Recovery may be served with process through its Registered Agent, Suren Harutyunyan, at 26901 Garret Drive, in Agoura Hills, California.

37. Gevs Recovery Center ("Gevs Recovery") is a California general corporation with its principal office located in Northridge, California. Gevs Recovery may be served with process through its Registered Agent, Stanislav Kolbasov, at 19448 Lassen Street, in Northridge, California.

38. Glendale Luxury Rehab LLC ("Glendale Luxury") is a California limited liability company with its principal office located in Glendale, California. Based upon filings with the California Secretary of State, Glendale Luxury's members are: (i) Lusine Avetisyan, a California domiciliary residing in Glendale, California; and (ii) Anahit Sargsyan, a California domiciliary residing in Glendale, California. Glendale Luxury may be served with process through its Registered Agent, Lusine Avetisyan, at 742 Cavanagh Road, in Glendale, California.

39. Granada Hills Treatment Center LLC ("Granada Hills Treatment") is a California limited liability company with its principal office located in Van Nuys, California. Based upon filings with the California Secretary of State, Granada Hills Treatment's sole member is Ilona Babayan, a California domiciliary residing in Van Nuys, California. Granada Hills Treatment may be served with process through its Registered Agent, Ilona Babayan, at 6511 Gloria Avenue, in Van Nuys, California.

40. HigherVision GH Inc. ("HigherVision") is a California general corporation with its principal office located in Glendale, California. HigherVision

may be served with process through its Registered Agent, AA Business Consulting, Inc., at 217 E. Alameda Avenue, Suite 307, in Burbank, California.

41. Hope Detox Center LLC ("Hope Detox") is a California limited liability company with its principal office located in North Hollywood, California. Based upon filings with the California Secretary of State, Hope Detox's sole member is Meruzhan Akopyan, a California domiciliary residing in North Hollywood, California. Hope Detox may be served with process through its Registered Agent, Meruzhan Akopyan, at 7930 Ethel Avenue, in North Hollywood, California.

42. Inspire Recovery Center Inc. ("Inspire Recovery") is a California general corporation with its principal office located in Van Nuys, California. Inspire Recovery may be served with process through its Registered Agent, Marine Hakopyan, at 7100 Hayvenhurst Avenue, Suite 314, in Van Nuys, California.

43. Integrity Recovery Center ("Integrity Recovery") is a California general corporation with its principal office located in Granada Hills, California. Integrity Recovery may be served with process through its Registered Agent, Hovhannes Tshavrushyan, at 17030 Ludlow Street, in Granada Hills, California.

44. Journey of a New Living ("Journey") is a California general corporation with its principal office located in Van Nuys, California. Journey may be served with process through its Registered Agent, Avetis Azatyan, at 6650 Columbus Avenue, in Van Nuys, California.

45. LA Wellness Home Inc. ("LA Wellness") is a California general corporation with its principal office located in Burbank, California. LA Wellness may be served with process through its Registered Agent, MFC Group, Inc., a Professional Accountancy Corp., at 130 W. Eulalia Street, Suite 201, in Glendale, California.

46. Lakeridge Recovery Center ("Lakeridge Recovery") is a California general corporation with its principal office located in Los Angeles, California. Lakeridge Recovery may be served with process through its Registered Agent, Vahag Meliksetyan, at 6664 Lakeridge Road, in Los Angeles, California.

47. Landale Recovery Center ("Landale Recovery") is a California general corporation with its principal office located in North Hollywood, California. Landale Recovery may be served with process through its Registered Agent, Benito D. Morales, Jr., at 6455 Bakman Avenue, in North Hollywood, California.

48. LH Blue Sky, Inc. is a California general corporation with its principal office located in Lake Hughes, California. LH Blue Sky may be served with process through its Registered Agent, Gor Habeshian, at 19520 Pine Canyon Road, in Lake Hughes, California.

49. Lion Recovery is a California general corporation with its principal office located in Van Nuys, California. Lion Recovery may be served with process through its Registered Agent, Harutyun Shirikchyan, at 14945 Bassett Street, in Van Nuys, California.

50. LNA Realty ("LNA Realty") is a California general corporation with its principal office located in North Hollywood, California. LNA Realty may be served with process through its Registered Agent, the Yepremyan Law Firm, at 4729 Lankershim Boulevard, in North Hollywood, California.

51. Medichex, Inc. d/b/a Lift Off Recovery ("Lift Off") is a California general corporation with its principal office located in Anaheim, California. Lift Off may be served with process through its Registered Agent, Aaron C. Watts, at 9900 Research Drive, in Irvine, California.

52. New Breath Recovery Inc. ("New Breath") is a California general corporation with its principal office located in Simi Valley, California. New Breath may be served with process through its Registered Agent, Melanie Davidian, at 465 E. Magnolia Boulevard, in Burbank, California.

53. New Life Recovery Center ("New Life Recovery") is a California general corporation with its principal office located in Lancaster, California. New Life Recovery may be served with process through its Registered Agent, Lusine Melkumyan, at 49349 80th Street West, in Lancaster, California.

54. New Life, Inc. ("New Life") is a California general corporation with its principal office located in Los Angeles, California. New Life may be served with process through its Registered Agent, Arthur Melkonynan, at 3787 Prestwick Drive, in Los Angeles, California.

55. Oasis Detox Inc. ("Oasis Detox") is a California general corporation with its principal office located in Chatsworth, California. Oasis Detox may be served with process through its Registered Agent, Ghukas Saydkhanyan, at 19661 Lassen Street, in Chatsworth, California.

56. Oasis Rehabilitation Center INC. ("Oasis Rehab") is a California general corporation with its principal office located in Chatsworth, California. Oasis Rehab may be served with process through its Registered Agent, Vahe Seyranyan, at 10741 Delco Avenue, in Chatsworth, California.

57. Pure Addiction Treatment ("Pure") is a California general corporation with its principal office located in Sherwood Forest, California. Pure may be served with process through its Registered Agent, California Corporate Agents, Inc. (c/o Chris Johnson), at 2108 N Street, Suite C, in Sacramento, California.

58. Reggie's Recovery, LLC is a California limited liability company with its principal office located in Sun Valley, California. Based upon filings with the California Secretary of State, Reggie's Recovery's members are: (i) Daniel Spencer Smario, a California domiciliary residing in Sun Valley, California; and (ii) Vregh Amirian, a California domiciliary residing in Sun Valley, California. Reggie's Recovery may be served with process through its Registered Agent, Vregh Amirian, at 9250 Del Arroyo Drive, in Sun Valley, California.

SHULMAN BASTIAN
FRIEDMAN BUI & O'DEA LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

59. Resilient Recovery Treatment Center ("Resilient Recovery") is a California general corporation with its principal office located in Encino, California. Resilient Recovery may be served with process through its Registered Agent, Dmitry Legov, at 6311 Yarmouth Avenue, in Encino, California.

60. Rise in Glendale Sobriety Center, Inc. ("Rise in Glendale") is a California general corporation with its principal office located in Glendale, California. Rise in Glendale may be served with process through its Registered Agent, Robert Akopyan, at 8600 Glenoaks Boulevard, #307, in Sun Valley, California.

61. Rising Lotus Recovery LLC ("Rising Lotus") is a California limited liability company with its principal office located in North Hollywood, California. Based upon filings with the California Secretary of State, Rising Lotus's members are: (i) Tigranuhi Carlstrom, a California domiciliary residing in La Palma, California; and (ii) Anahit Kechejyan, a California domiciliary residing in Valley Glen, California. Rising Lotus may be served with process through its Registered Agent, Anahit Kechejyan, at 13609 Debby Street, in Van Nuys, California.

62. Ritz Recovery Inc. is a California general corporation with its principal office located in Los Angeles, California. Ritz Recovery may be served with process through its Registered Agent, KB Accounting, Inc. (c/o Karine Ghazarian), at 1802 S. Victory Boulevard, in Glendale, California.

63. Sadag Treatment Solutions, LLC ("Sadag Treatment") is a California limited liability company with its principal office located in West Hills, California. Based upon filings with the California Secretary of State, Sadag Treatment's members are: (i) Aleksandr Mkrtchyan, a California domiciliary residing in Porter Ranch, California; (ii) Zoriana Ana Vinner, a California domiciliary residing in Chatsworth, California; and (iii) Georgi Agamalian, a California domiciliary residing in Glendale, California. Sadag Treatment may be served with process

through its Registered Agent, Aleksandr Mkrtchyan, at 11380 Oakford Lane, in Porter Ranch, California.

64. Saint Angel Recovery Center, Inc. ("Saint Angel") is a California general corporation with its principal office located in Tarzana, California. Saint Angel may be served with process through its Registered Agent, Levon Martirosyan, at 19567 Oxnard Street, in Tarzana, California.

65. Saint Lawrence Recovery ("Saint Lawrence") is a California general corporation with its principal office located in Panorama City, California. Saint Lawrence may be served with process through its Registered Agent, Hrach J. Gasparyan, at 13043 Willard Street, in North Hollywood, California.

66. Sequoia Recovery Center ("Sequoia Recovery") is a California general corporation with its principal office located in Sanger, California. Sequoia Recovery may be served with process through its Registered Agent, Church & Ministry Compliance Consulting (c/o Max H. Herr and/or Martha E. Pawluk-Herr), at 1173 Verona Place, in Pomona, California.

67. Shadow Hills Recovery Inc. ("Shadow Hills") is a California general corporation with its principal office located in Westlake Village, California. Shadow Hills may be served with process through its Registered Agent, Suren Harutyunyan, at 265 Sunset Drive, #240, in Westlake Village, California.

68. Soul Detox and Recovery Inc. ("Soul Detox") is a California general corporation with its principal office located in North Hollywood, California. Soul Detox may be served with process through its Registered Agent, Jaclyn Chorabajian, at 8124 Shadyglade Avenue, in North Hollywood, California.

69. Star City Recovery Inc. ("Star City") is a California general corporation with its principal office located in Tarzana, California. Star City may be served with process through its Registered Agent, Ara Boyajian, at 4640 Dunas Lane, in Tarzana, California.

70. Sun and Moon Rehabilitation ("Sun and Moon") is a California general corporation with its principal office located in Arleta, California. Sun and Moon may be served with process through its Registered Agent, Davit Gasparyan, at 11539 Curry Avenue, in Los Angeles, California.

71. Tarzana Recovery Center ("Tarzana Recovery") is a California general corporation with its principal office located in Tarzana, California. Tarzana Recovery may be served with process through its Registered Agent, Narek Oganyan, at 5371 Vanalden Avenue, in Tarzana, California.

72. Tranquility Recovery Center, Inc. ("Tranquility Recovery") is a California general corporation with its principal office located in Sun Valley, California. Tranquility Recovery may be served with process through its Registered Agent, Kazar Markaryan, at 11310 Wentworth Street, in Sun Valley, California.

73. Trinity Health Partners LLC ("Trinity Health") is a California limited liability company with its principal office located in Tarzana, California. Based upon filings with the California Secretary of State, Trinity Health's sole member is Brian Angel, a California domiciliary residing in Tarzana, California. Trinity Health may be served with process through its Registered Agent, Brian Angel, at 19528 Ventura Boulevard, Suite 383, in Tarzana, California.

74. Uplift Recovery Center LLC ("Uplift Recovery") is a California limited liability company with its principal office located in Pasadena, California. Based upon filings with the California Secretary of State, Uplift Recovery's members are: (i) Mona Roberts, a California domiciliary residing in Pasadena, California; (ii) Stephan Bakarian, a California domiciliary residing in Pasadena, California; and (iii) Hratch Jabourian, a California domiciliary residing in Pasadena, California. Uplift Recovery may be served with process through its Registered Agent, LegalZoom.Com, Inc. (c/o Sandra Menjivar, Jesse Camarena,

Arielle Devay, Angie Ramirez, and/or James Sookame), at 500 N. Brand Boulevard, Suite 890, in Glendale, California.

75. Vanity Detox Center Inc. ("Vanity Detox") is a California general corporation with its principal office located in Van Nuys, California. Vanity Detox may be served with process through its Registered Agent, Armen Akopyan, at 7100 Hayvenhurst Avenue, Suite 314, in Van Nuys, California.

76. Vanity Wellness Center Inc. ("Vanity Wellness") is a California general corporation with its principal office located in Woodland Hills, California. Vanity Wellness may be served with process through its Registered Agent, Sam Kesoyan, at 7100 Hayvenhurst Avenue, Suite 314, in Van Nuys, California.

77. Willpower Recovery Center, Inc. ("Willpower Recovery") is a California general corporation with its principal office located in Pasadena, California. Willpower Recovery may be served with process through its Registered Agent, Ashot Galadjian, at 8849 Maple Avenue, in Hesperia, California.

78. Wish Recovery House LLC ("Wish Recovery") is a California limited liability company with its principal office located in Northridge, California. Based upon filings with the California Secretary of State, Wish Recovery's sole member is Sergey Avetisyan, a California domiciliary residing in Montrose, California. Wish Recovery may be served with process through its Registered Agent, Sergey Avetisyan, at 2421 Montrose Avenue, #104, in Montrose, California.

**JURISDICTION AND VENUE**

79. Pursuant to 28 U.S.C. § 1332, the Court has subject matter jurisdiction over this action because the amount in controversy exceeds $75,000, exclusive of interest and costs, and there is complete diversity, as it involves a dispute between citizens of different states. Namely, Plaintiff is an Illinois citizen, and all Defendants are citizens of states other than Illinois, namely California and Arizona.

80. Pursuant to 28 U.S.C. § 1331, the Court also has subject matter jurisdiction over this action because certain of HCSC's claims against CodeMax and the Providers arise under the laws of the United States of America, namely the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961, *et seq.* ("RICO"). And pursuant to 28 U.S.C. § 1367, this Court has supplemental subject matter jurisdiction over HCSC's remaining claims in this action because they are so related to the HCSC's federal RICO claims as to form part of the same case or controversy.

81. This Court has general and specific personal jurisdiction over the Defendants, each of which maintains its principal office and/or conducts business in the Central District of California, including the activities that give rise or relate to HCSC's causes of action in this case.

82. Venue is proper in the Western Division of the Central District of California because a substantial part of the events, acts, or omissions giving rise to HCSC's claims occurred in this judicial district, and in its Western Division in particular. CodeMax orchestrated and executed the scheme described herein in this district, and many of the Providers are located in this District.

## FACTUAL BACKGROUND

### A. HCSC Offers and Administers Health Plans

83. HCSC administers and/or insures health benefit plans.

84. Relevant here, HCSC offered and administered Individual Exchange Qualified Health Plans in the state of Oklahoma in 2023 and 2024 (the "QHPs"). These plans, which are offered on federally facilitated health insurance marketplaces pursuant to the Affordable Care Act, must meet several regulatory requirements.

85. For example, only Oklahoma residents who are not enrolled in Medicare may apply for coverage under these QHPs. To be eligible for benefits

under these QHPs, plan members must be Oklahoma residents at the time of their enrollment and must remain Oklahoma residents.

86. These QHPs offered benefits for certain covered services, both for in-network services and out-of-network services. If a provider has a contract that governs its relationship with HCSC health plans, then it is considered an in-network provider. If a provider does not have a contract that governs its relationship with HCSC health plans, then it is considered an out-of-network ("OON") provider. OON providers often submit claims for services rendered to members of HCSC health plans based on an assignment from a member, effectively standing in the members' shoes to receive the members' benefits under the plans.

87. The Providers here were, at all relevant times, OON providers.

88. The QHPs offer certain benefits for covered services, and HCSC pays claims based on the benefits available under the terms of the relevant QHP.

89. In instances where HCSC later determines it paid more in benefits than it should have or that the payments were made in error, the QHPs authorize HCSC to obtain a refund of that overpayment from the entity to which it was paid, including, but not limited to, OON providers. Under the terms of the QHP, members are obligated to do whatever is necessary to secure HCSC's right to recover the excess payments.

**B. Claim Submissions**

90. Providers submit claims for payment using industry-standard formats. For professional providers, this is an 837p (the electronic equivalent of a CMS-1500 paper form). For institutional (or facility) providers, this is an 837i (the electronic equivalent of a UB-04/CMS-1450 paper form).

91. The Providers at issue here submitted claims using the 837i institutional/facility format.

SHULMAN BASTIAN FRIEDMAN BUI & O'DEA LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

92. Claims must include certain material information, including but not limited to: (i) demographic information about the patient/member; (ii) information identifying the member's HCSC benefit plan; (ii) information about the provider, including its name, address, tax identification number ("TIN"), and National Provider Identification number ("NPI"); (iii) information about the services or treatments for which the claim is seeking benefits; and (iv) information about how and why the member received those services or treatments from the provider. An OON provider that submits claims based on an assignment from a member also must list the amount it is charging the member for those services or treatments.

93. By submitting a claim to HCSC, providers, including the Providers at issue here, represent and certify that the information in the claim is true, accurate, and complete.

94. HCSC receives more than one million claims per day. As is common industry practice, HCSC processes most of the claims it receives without human intervention, relying on the information conveyed by the claims to process and adjudicate those claims.

95. The vast majority of provider claims are submitted electronically. Electronic claims can be automatically filled out based on the information in a provider's electronic health record system. They are generally easier to submit and to track, and they are less likely to include mistakes that delay adjudications and, consequently, payments. Electronic claim submissions allow providers of all sizes to leverage speed, accuracy, and efficiency in ways that are not possible with paper claims.

96. These efficiencies are diminished with paper claim submissions, which must be manually filled out, printed, and then mailed. When claims are mailed to HCSC's P.O. Box in Dallas, Texas, they have to be individually entered into HCSC's claims system. All of this increases labor, costs, and the likelihood for errors, which slow down adjudication and payments of payable claims.

**C. CodeMax and the Providers**

97. CodeMax is a revenue cycle management and billing company that specializes in offering billing solutions and services to behavioral health providers, including substance abuse and addiction treatment facilities. Among other things, CodeMax verifies and tracks members benefits, creates claims and submits them to payors (including HCSC), maintains physical and electronic lockboxes for providers where claim payment and adjudication information is sent, provides software that integrates with providers' practice management systems, performs audits, recommends "proactive payment recovery strategies," and provides "real-time claim tracking and reporting."

98. CodeMax assures its clients it will provide "comprehensive compliance and coding accuracy," while also "maximizing [its clients'] payments on every claim."

99. The Providers at issue here used CodeMax to perform billing and revenue cycle management services, including the submission of claims to HCSC for plan benefits under the subject QHPs.

100. CodeMax and the Providers paid close attention to the reimbursements received from varying plans.

101. Upon information and belief, CodeMax, as compensation for its services, kept a certain percentage of what the Providers collected from the claims CodeMax submitted on behalf of those Providers. Simply put, the more money the Providers were paid for each claim, the more money CodeMax made.

102. The Providers offer detoxification and residential substance abuse treatments at their respective Southern California facilities. During 2023 and 2024, these treatments were not covered by Medicare, but the Oklahoma QHPs generally included benefits for behavioral health treatments, subject to the other conditions and requirements set out in the QHPs.

103. Healthcare billing companies, like CodeMax, and OON providers, including the Providers here, understand that the amount of money a particular plan will be responsible for paying for any service or treatment is determined by the plan documents that govern the relationship between the plan and its members. The subject QHPs are no different.

104. CodeMax and the Providers also know (and intend) that HCSC relies on the information and representations in claim submissions to determine whether plan benefits are available for the services listed in the claims and, if benefits appear to be available, then also the amount of those benefits that are due to the member (but paid to the Providers based on the representation that the member has assigned his or her benefits to the Provider).

105. The claims at issue in this lawsuit were created and submitted by CodeMax to HCSC on behalf of the Providers. The claims represented, among other things, that a patient was a member of an Oklahoma QHP, that a Provider treated a member in certain ways, on specific days, that the Provider was charging the member a particular amount for that treatment, that the Provider had an assignment from the member authorizing the Provider to collect the member's benefits under the QHP directly from HCSC, and that the information in the claim was true, accurate, and complete. But much of the information in the claims was intentionally false, misleading, or incomplete.

**D. The Fraudulent Scheme**

106. Defendants worked together to execute a sophisticated, multi-step fraudulent scheme, which they leveraged to obtain tens of millions of dollars from HCSC. The basic scheme had three steps: (i) **manufacturing the patients**—identifying, recruiting, creating, or brokering members of the QHPs and delivering them to the Providers' facilities in California; (ii) **manufacturing the claims**—obtaining authorizations based on generic scripts, concealing the source of the patients, identifying treatments that were not (and in many cases could not have

been) provided, and listing fake charges Defendants never intended to collect from patients that were inflated solely to extract as much as possible from the QHPs; and (iii) **maximizing the illicit profits**—identifying, testing, and exploiting opportunities to manipulate reimbursements and obtain tens of millions of extra dollars.

i. **Manufacturing Patients: Defendants sought out—or created—Oklahoma QHP members and got them to California.**

107. *Find (or Create) Oklahoma QHP Members.* The Providers and CodeMax identified members of Oklahoma QHPs, and/or paid patient brokers to find members of Oklahoma QHPs or to find individuals who would appear eligible to be a member of Oklahoma QHPs and get them enrolled as members of Oklahoma QHPs. From July 2024 through December 2024, there were more than 100 Oklahoma QHP members whose eligibility for benefits began and then, *somehow*, were in a Defendant Provider's facility in Southern California within *seven days* of eligibility.[1] At least half of these members were purportedly at a Defendant Provider's facility in Southern California on the *same day* or the *very next day* after they became eligible for benefits under an Oklahoma QHP. For example:

a. A member was enrolled in an Oklahoma QHP with eligibility for benefits beginning March 1, 2024, and by the very next day, March 2, 2024, the member was purportedly already at **New Life**. CodeMax created and submitted (electronic) claims for **New Life** seeking benefits for March 2 through April 1, 2024. Then, on August 6, 2024, this member was purportedly back at

[1] These suspicious enrollments spiked around the time that CodeMax and the Providers were bilking the QHPs for about 10 times more than Defendants knew the QHPs should pay. *See* ¶¶ 123-124.

SHULMAN BASTIAN FRIEDMAN BUI & O'DEA LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

**New Life** and CodeMax created and submitted (paper) claims for **New Life** seeking this member's benefits for dates of service from August 6 through August 30, 2024. Some specific representative claim submissions are set out below:

| Date of Service | Provider | Claim |
|---|---|---|
| 3/2/24 | New Life | ***7P420H |
| 8/6/24 | New Life | ***10230C |

b. Another member was enrolled in an Oklahoma QHP with eligibility for benefits beginning on March 1, 2024, and by the next day, March 2, 2024, was purportedly already at **Freedom Recovery**. CodeMax created and submitted claims for **Freedom Recovery** seeking benefits for March 2 through March 22, 2024. Then, on August 9, 2024, this member was purportedly at **Connected Recovery**. CodeMax created and submitted claims for **Connected Recovery** seeking benefits for August 9 through August 15, 2024.

| Date of Service | Provider | Claim |
|---|---|---|
| 3/2/24 | Freedom Recovery | ***640S0H |
| 8/8/24 | Connected Recovery | ***10230C |

c. Multiple members were enrolled in an Oklahoma QHP with eligibility for benefits beginning on May 1, 2024, and were somehow at a Provider's facility in California *the very same day*. One was at **LH Blue Sky** from May 1 through June 1 and then June 5 through June 25, and then again on August 10 and 11, 2024. Another was at **Sun and Moon** from May 1 through May 8, then at **HigherVision** from August 18 through September 4, 2024.

| Date of Service | Provider | Claim |
|---|---|---|
| 5/1/24 | LH Blue Sky | ***98330H |
| 8/10/24 | LH Blue Sky | ***18220C |

SHULMAN BASTIAN FRIEDMAN BUI & O'DEA LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

| | | |
|---|---|---|
| 5/1/24 | Sun and Moon | ***V1700H |
| 8/18/24 | HigherVision | ***16560C |

108. The pace with which these individuals enrolled in and/or became eligible for benefits under an Oklahoma QHP and then appeared at a Provider's facility in California is indicative of a layer of intentional, sophisticated, coordinated recruitment, enrollment, and patient brokering.[2] Additionally, many of these individuals provided "burner" or temporary email addresses. The following domains are just some examples: @bvhrk.com, @kvhrw.com, @neko2.net, @nezid.com, @nowni.com, @nthrl.com, @tccho.com, @tmmwj.com, @zblock.com, @zslsz.com. Several of these domains resolve back to common backend servers (*e.g.*, mainnetmail.com, rejecthost.com), which generate temporary, random, intentionally difficult-to-track domains, which are often used by scammers.

109. These "body brokering" tactics, which occur when one party refers or recommends a patient to a provider offering detoxification or substance abuse treatment in exchange for (or in anticipation of) a financial or other economic benefits, are prohibited in California. *See e.g.,* Cal. Health & Safety Code, §§ 445, 11831.6, and 11831.7.

110. Claims represented that the admission "source" for the Oklahoma QHP members was "9," which means "information not available." That was intentionally false and misleading, however, because if the true source were disclosed, Defendants knew that the claims would not have been payable.

[2] An October 2025 Wall Street Journal investigation revealed that such "body brokering" tactics were rampant in Southern California, as brokers would identify insured (or insurable) individuals who were struggling with drug addiction and promise them luxurious accommodations. *See* https://www.wsj.com/us-news/drug-rehabs-insurance-curbing-6c56ded6 (accessed on August 24, 2026).

111. The claims resulting from Oklahoma QHP members who received treatment within seven days of becoming eligible for benefits under an Oklahoma QHP (during the middle of the year) resulted in HCSC paying the Providers more than $8 million. The chart below lists examples of Providers with more than 5 patients who fell into this category.

| Provider | Number of Members |
|---|---|
| Freedom Recovery | 15 |
| Connected Recovery | 14 |
| Uplift Recovery | 10 |
| Vanity Wellness | 9 |
| California Wellness | 8 |
| LH Blue Sky | 8 |
| Sadag | 7 |
| Pure | 7 |
| Granada Hills | 7 |
| Vanity Detox | 7 |
| Wish | 6 |
| Inspire Recovery | 5 |
| Ritz | 5 |
| Journey | 5 |
| Vita Nova | 5 |

**ii. Manufacturing Claims: Defendants created claims based on false pretenses, identifying treatments that were not (or could not have been) performed, and listing fake charges.**

112. With purported members identified as the access points to the QHPs' funds, Defendants generated claims that were false and misleading in multiple, independent respects.

113. *Use scripts to get authorizations.* Upon information and belief, CodeMax coordinated with its Provider clients to manufacture (and update) generic scripts and descriptions of (potential) patients, which were intended to be used to obtain authorizations for treatment, irrespective of the patients' actual clinical condition and the Providers' actual treatment plans.

SHULMAN BASTIAN FRIEDMAN BUI & O'DEA LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

114. *Bill the Oklahoma QHPs with fake charges.* CodeMax created claims for the Providers with inflated, fake charges, often more than $8,000 per day, which the Providers never intended to actually charge patients, but, instead, were intended to maximize the amounts paid by the QHPs. In fact, as described below, CodeMax even used these inflated charges as part of a marketing pitch to attract additional provider clients and broaden the scope of the scheme.

115. *Submit duplicate claims.* CodeMax also billed the same treatment, for the same patient, on the same date of service, but under two different Providers. The chart below includes representative examples:

| Patient | DOS | Claim 1 Provider | Claim 1 | Claim 2 Provider | Claim 2 |
|---|---|---|---|---|---|
| 1 | 8/14/24 | Vita Nova | ***15040C | Soul Detox | ***15980C |
| 2 | 8/16/24 | California Wellness | ***24270C | Sun And Moon | ***12240H |
| 3 | 8/17/24 | Sun And Moon | ***27780C | California Wellness | ***762N0H |
| 4 | 8/17/24 | Ritz Recovery | ***13150C | Granada Hills | ***11990H |
| 5 | 8/18/24 | Sun And Moon | ***23340C | California Wellness | ***26740C |
| 6 | 9/4/24 | New Breath | ***10020C | 4 Season | ***64F50H |

116. *Bill for more patients than Providers are licensed to treat.* California licenses each Provider for a fixed number of beds — the facility's licensed occupancy limit. On some days, the number of members of Oklahoma QHPs purportedly at a Provider's facility *exceeded that Provider's licensed occupancy limit.* For example:

a. On August 3, 5, 6, 7, 8, 9, 10, 11, 12, 15, 16, 17, 21, 22, 23, 24 and September 1 and 2, **Granada Hills** purportedly had more than 6 members of Oklahoma QHPs at its facility, but it is only licensed for 6 beds. The chart below lists seven claims submitted to HCSC for different plan members, but for the same date of service (August 16, 2024).

| Provider | Claim | Date of Service | Amount Charged | Date Received by HCSC |
|---|---|---|---|---|
| Granada Hills | ***0G20H | 08/16/24 | $9,500.00 | 11/14/24 |

SHULMAN BASTIAN FRIEDMAN BUI & O'DEA LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

| | | | | |
|---|---|---|---|---|
| Granada Hills | ***3930C | 08/16/24 | $9,500.00 | 9/11/24 |
| Granada Hills | ***1370H | 08/16/24 | $9,200.00 | 11/11/24 |
| Granada Hills | ***1890H | 08/16/24 | $9,200.00 | 11/11/24 |
| Granada Hills | ***3570C | 08/16/24 | $9,200.00 | 9/11/24 |
| Granada Hills | ***9680H | 08/16/24 | $9,200.00 | 11/11/24 |
| Granada Hills | ***0000H | 08/16/24 | $9,200.00 | 11/11/24 |

b. On September 9 – 22, **Ananda** purportedly had more than 6 members of Oklahoma QHPs at its facility, but it is only licensed for 6 beds.

| Provider | Claim | Date of Service | Amount Charged | Date Received by HCSC |
|---|---|---|---|---|
| Ananda | ***8X30H | 09/22/24 | $8,300.00 | 10/30/24 |
| Ananda | ***1X40H | 09/22/24 | $8,300.00 | 10/30/24 |
| Ananda | ***2X30H | 09/22/24 | $8,300.00 | 10/30/24 |
| Ananda | ***Q240H | 09/22/24 | $8,300.00 | 10/28/24 |
| Ananda | ***9X40H | 09/22/24 | $8,300.00 | 10/30/24 |
| Ananda | ***3X70H | 09/22/24 | $8,300.00 | 10/30/24 |
| Ananda | ***3840C | 09/22/24 | $8,500.00 | 10/7/24 |

c. On August 16, 17, and 18, **Sun and Moon** purportedly had more than 6 members of Oklahoma QHPs at its facility, but it is only licensed for 6 beds.

| Provider | Claim | Date of Service | Amount Charged | Date Received by HCSC |
|---|---|---|---|---|
| Sun and Moon | ***8300C | 8/16/24 | $8,500.00 | 9/5/24 |
| Sun and Moon | ***9990C | 8/16/24 | $8,300.00 | 9/4/24 |
| Sun and Moon | ***2240H | 8/16/24 | $8,300.00 | 11/11/24 |
| Sun and Moon | ***4220C | 8/16/24 | $8,500.00 | 9/9/24 |
| Sun and Moon | ***3210H | 8/16/24 | $8,500.00 | 11/4/24 |
| Sun and Moon | ***6700C | 8/16/24 | $8,300.00 | 9/9/24 |
| Sun and Moon | ***3900C | 8/16/24 | $8,300.00 | 9/5/24 |

117. On many more days during 2024, more than two-thirds of a Provider's licensed beds were purportedly filled by members of Oklahoma QHPs. The chart below lists Providers that had more than 50 days when two-thirds of their beds were filled by members of Oklahoma QHPs between June 1, 2024, and December 31, 2024, according to CodeMax and the Providers' own claim submissions to HCSC:

SHULMAN BASTIAN FRIEDMAN BUI & O'DEA LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

| Provider | Days |
|---|---|
| 4 Season | 189 |
| Sun And Moon | 160 |
| Freedom Recovery | 137 |
| Connected Recovery | 128 |
| Casa Leona | 123 |
| New Breath | 114 |
| 360 Recovery | 110 |
| Rise In Glendale | 105 |
| Saint Lawrence | 105 |
| Granada Hills | 97 |
| Alpha Recovery | 97 |
| Journey | 95 |
| Soul Detox | 91 |
| Ansuva | 91 |
| EHG | 87 |
| Believe Detox | 68 |
| Ananda | 67 |
| Aya | 65 |
| HigherVision | 64 |
| Clear Conscience | 60 |
| Willpower Recovery | 54 |
| Integrity Recovery | 53 |
| Glendale Luxury | 53 |
| Vanity Detox | 50 |

118. These figures count only patients who were also purported Oklahoma QHP members; they do not include any of the facilities' other patients. Of course, the Providers did not limit their business to Oklahoma QHP members — they also admitted and billed for patients covered by other plans. Counting all their patients, the Providers were necessarily billing for more patients than their licenses permitted them to house. That leaves no innocent explanation: either the patients were not actually present, in which case the claims are fabricated; or the facilities were filled beyond their licensed capacity and could not have delivered the individualized, licensed residential treatment the claims represented. Either way,

SHULMAN BASTIAN
FRIEDMAN BUI & O'DEA LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

the representation in each claim — that the Provider treated the member in the manner and on the dates stated in the billed — was false.

**iii. <u>Maximizing the illicit profits:</u> Defendants identify, test, confirm, and then exploit system to obtain tens of millions more.**

119. Throughout 2023 and most of 2024, CodeMax generally submitted electronic claims for the Providers treating Oklahoma QHP members. But in late 2024, it discovered a way to make the false and misleading claims result in obtaining as much as 10 times more money from HCSC.

120. *Find ways to "skirt the algorithm."* Sometime around August 2024, CodeMax heard that it could trick HCSC into paying significantly more than was due under the Oklahoma QHPs by creating and mailing paper claims, which would then be manually entered into HCSC's claims systems. CodeMax marketed this trick to providers in Southern California, claiming that it had a way to "skirt the algorithm."

121. *Test the trick*. CodeMax tested this trick by submitting a few claims, not electronically as is typical, but on paper. After submitting these paper test claims to HCSC, CodeMax feverishly checked the statuses of the claims to see whether the trick worked. In many cases, CodeMax employees checked the status of the same claim multiple times in a single day. CodeMax employees saw that the Oklahoma QHPs paid the test claims at more than $8,000, which was nearly 10 times the amount that CodeMax and the Providers knew was the correct amount under the Oklahoma QHPs (assuming that a claim was even payable). CodeMax employee Constance Ontiveros was one of the first CodeMax employees to evaluate whether the trick worked, but there were more than 60 other CodeMax employees (or individuals with CodeMax email addresses, at least) involved, including Marine Hakopyan (the registered agent for Inspire Detox).

122. *Market the Trick.* CodeMax marketed the trick to existing and prospective clients throughout Southern California, trumpeting a "secret" success

rate and claiming that CodeMax was the only billing company in the area that was allowed to bill, and that could collect, at such high amounts. CodeMax's marketing efforts were known to other billing companies in the area, who lost clients because they, unlike CodeMax, were not willing to "skirt the algorithm" or to inflate what their provider clients charged for services.

123. *Store up claims*. While evaluating the trick and marketing it to existing or prospective clients, CodeMax significantly reduced the volume of electronic claim submissions for the Providers so that, once it was confident the trick would work, it could maximize the resulting ill-gotten gains by quickly mailing as many stored-up claims as possible.

124. *Flood the Oklahoma QHPs with paper claims*. After about a dozen test claims were mailed (all for either **Inspire Recovery, Vanity Wellness,** or **Vanity Detox**) and monitored, CodeMax confirmed that the trick worked and that paper claim submissions caused HCSC to pay as much as 10 times more than was actually owed under the QHPs (assuming the claims were otherwise actually payable). Once confirmed, CodeMax opened the floodgates. The chart below shows the number of paper claims received by HCSC from late August through mid-September and the amount of money paid by HCSC based on the paper claims it received on those dates:

| Date Received by HCSC | Number of Paper Claims | Amount Obtained by Defendants |
|---|---|---|
| 8/28/24 | 368 | $2,586,901 |
| 8/29/24 | 590 | $4,061,489 |
| 8/30/24 | 9 | $59,585 |
| 9/3/24 | 1 | $8,084 |
| 9/4/24 | 563 | $3,808,757 |
| 9/5/24 | 943 | $6,234,851 |
| 9/6/24 | 1 | $8,084 |
| 9/9/24 | 81 | $476,524 |
| 9/11/24 | 434 | $2,779,126 |
| 9/12/24 | 56 | $363,423 |
| 9/13/24 | 9 | $46,501 |

| | | |
|---|---|---|
| 9/16/24 | 193 | $1,236,321 |
| 9/17/24 | 39 | $289,425 |
| 9/18/24 | 23 | $165,055 |

125. Attached as Exhibit A is a chart identifying the (redacted) claim number, the Provider on whose behalf CodeMax created and submitted the claim, the date of service, the date the claim was created by CodeMax, the date the claim was received by HCSC, the amount charged, and the amount HCSC was tricked into paying because of it.

126. *Increase the (fake) charges.* During this flood of paper claim submissions, many CodeMax clients increased the amounts per day that they were purportedly charging QHP members by $1,000 or more. CodeMax and the Providers knew that the billed charges in the claims were false, however, as they never intended to hold members responsible for the amounts listed in the claims and, instead, were only trying to maximize the amounts paid by members' plans. The chart below shows examples of significant increases to Providers' listed charges that took place around the time CodeMax identified the paper claim trick:

| Provider Defendant | Revenue Code | Original Amount Charged | Increased Amount Charged | Date Increased |
|---|---|---|---|---|
| LA Wellness | 0126<br>1002 | $6,900<br>$6,500 | $8,500<br>$8,200 | 8/4/2024<br>7/26/2024 |
| Wish Recovery | 0126<br>1002 | $8,500<br>$8,300 | $9,500<br>$9,300 | 8/6/2024<br>8/8/2024 |
| Inspire Recovery | 0126<br>1002 | $8,500<br>$8,200 | $9,700<br>$9,500 | 8/22/2024<br>8/3/2024 |
| Vanity Detox | 0126<br>1002 | $8,500<br>$8,200 | $9,750<br>$9,500 | 8/23/2024<br>8/12/2024 |
| Gevs Recovery | 0126<br>1002 | $8,500<br>$8,300 | $9,500<br>$9,200 | 9/4/2024<br>9/23/2024 |
| Willpower Recovery | 0126<br>1002 | $8,500<br>$8,200 | $9,700<br>$9,500 | 9/5/2024<br>10/2/2024 |
| Lakeridge | 0126<br>1002 | $8,500<br>$8,200 | $9,700<br>$9,500 | 9/25/2024<br>10/2/2024 |
| Uplift Recovery | 0126<br>1002 | $8,500<br>$8,300 | $9,700<br>$9,500 | 10/1/2024<br>10/3/2024 |
| Integrity Recovery | 0126 | $8,500 | $9,700 | 10/2/2024 |
| Deluxe Treatment | 0126<br>1002 | $8,500<br>$8,300 | $9,700<br>$9,500 | 10/5/2024<br>10/14/2024 |
| West Valley | 0126<br>1002 | $8,600<br>$8,400 | $10,000<br>$9,500 | 10/16/2024<br>11/19/2024 |

127. *Retreat to electronic claim submissions*. CodeMax continued to monitor the effectiveness of the paper claim trick through the end of 2024. But when CodeMax employees began to suspect that the trick was no longer working in or around October 2024, CodeMax again tested this and, while waiting to see what happened, held back claim submissions. When CodeMax saw that the trick was no longer resulting in huge overpayments, CodeMax stopped printing and mailing paper claims and went back to submitting claims electronically. The trick specifically targeted the Oklahoma QHPs. While CodeMax abruptly shifted to paper claims for Oklahoma QHP members, CodeMax continued to submit electronic claims for members of other HCSC plans. The chart below shows the

128. *Ignore requests for return of overpayments*. By December 2024, HCSC identified the millions of dollars of overpayments made to the Providers and sent the Providers letters—one for each paper claim submission—requesting the return of the overpayments. But the Providers did not return the money and, generally, did not even respond at all. (HCSC did not know about CodeMax's involvement or role at that time.)

129. *Other indicia of a coordinated, sophisticated fraudulent scheme*. There are multiple indicia of deeper connections between the web of entities named as Defendants, aside from simply sharing a billing company (CodeMax) and retaining the same attorneys.

a. Many of the Providers have overlapping ownership or registered agents. For example, the registered agents for Inspire Recovery (Marine Hakopyan), Vanity Detox (Armen Akopyan), and Vanity Wellness (Sam Kesoyan) all occupy the same suite at 7100 Hayvenhurst Avenue, which is where CodeMax (whose founder and CEO is John Hakopyan) has an office. In fact, Marine Hakopyan is (or was) also a CodeMax

SHULMAN BASTIAN FRIEDMAN BUI & O'DEA LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

employee (or at least had a CodeMax email address), who frequently checked the statuses of the paper claims CodeMax had submitted to HCSC to determine whether the paper claim-submission scheme was working (see paragraph 121, above). Robert Akopyan, for his part, is the registered agent for Rise in Glendale, while Meruzhan Akopyan is the registered agent for Hope Detox. Similarly, Hovsep Shirikchyan serves as the registered agent for Clear Conscience and Comfort Recovery, though he is listed at different addresses in Agoura Hills and Chatsworth, respectively.

b. Many Oklahoma QHP members appear in claims submitted by multiple Providers, which is indicative of a centralized effort to fill beds with patients who are members of certain insurance plans (here, the Oklahoma QHPs) to extract as much financial gain as possible. For example, Uplift Recovery had claims for more than 40 members of Oklahoma QHPs who also were purportedly treated at another Provider, too; Connected Recovery had claims for more than 60 members of Oklahoma QHPs who also were purportedly treated at another Provider, too; Dozens of other Providers shared more than 25 members of Oklahoma QHPs.

c. Several Providers identified the same attending physician provider in claim submissions. For example, Dr. Eric Chaghouri was identified as the attending provider for 15 different Providers and Dr. Jonathan Reitman was identified as the attending provider for another 8 Providers.

130. Many of the underlying facts concerning this massive, shocking fraud are uniquely within Defendants' possession—for example, the individuals and

entities involved in brokering persons to, between, and among the Providers, and the payments funding and fueling the enrollment (and continued membership) of such persons into the Oklahoma QHPs and their transport to California.

131. At any rate, the general facts bear repeating. *Assuming for only these purposes that the individuals were actually Oklahoma residents and that they actually needed treatment offered by Defendants*, Defendants arranged for Oklahoma residents to become eligible for benefits under Oklahoma QHPs during the middle of the year—often paying, or arranging for the payment of, a few hundred dollars in premiums to keep insurance coverage active—and arranged for those individuals to go 1,500 miles, from rural Oklahoma to Southern California. During these journeys, they drove past and flew over hundreds (if not more) of behavioral health treatment providers, so that Defendants could effectively use these individuals' newly acquired QHP credentials like ATM cards.

132. In total, CodeMax and the Providers obtained more than $20 million in funds that they knew they were not entitled to from the Oklahoma QHPs. The Providers have retained those funds, despite being requested to return them, and CodeMax retained a portion or percentage of those funds as well.

## FIRST CLAIM FOR RELIEF

### Violation of 18 U.S.C. § 1962(c) (Substance Abuse Enterprise) (Against CodeMax)

133. HCSC incorporates by reference paragraphs 1 through 132, as if fully set forth herein.

134. CodeMax violated 18 U.S.C. § 1962(c) because it is associated with the Substance Abuse Enterprise (as defined below), which engaged in and affected interstate commerce, and CodeMax, directly and indirectly, conducted and participated in the conduct of the Substance Abuse Enterprise's affairs through a pattern of racketeering activities, namely violations of 18 U.S.C. § 1341 (mail fraud) and § 1343 (wire fraud).

SHULMAN BASTIAN FRIEDMAN BUI & O'DEA LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

***The Substance Abuse Enterprise***

135. CodeMax and the Providers whose claims it submitted to HCSC formed an association-in-fact enterprise (the "Substance Abuse Enterprise"), under 18 U.S.C. § 1961(4).

136. The Substance Abuse Enterprise's purpose was to obtain more money from health plans than the health plans were supposed to pay for the substance abuse treatment performed by the Enterprise's Provider members.

137. The members of the Substance Abuse Enterprise maintained relationships and links that allowed the Substance Abuse Enterprise to more effectively achieve its purpose than its members could have done separately or independently. CodeMax can test, probe, and evaluate various tricks and strategies using Provider Members' varying billing credentials at, respectively, low volumes, which is more likely to keep the conduct under the radar and makes it more difficult to identify. If one provider submitted all its claims in a way intended to circumvent fraud, waste, and abuse prevention strategies, or otherwise trick a plan into paying more than it should under the plan terms, then it would be much easier to spot and quickly stamp out. But by shifting the Provider members of the Enterprise through which CodeMax tests tricks and gathers information, it allows for much greater information gathering and probing of health plans than could be done through a single Provider. CodeMax's surreptitious testing and then, upon confirmation of a target to exploit, rapid execution of the trick or exploit results in more money for all members of the Enterprise and lessens the chance of detection by health plans (or at least increases the time required for health plans to catch on to the circumvention strategies).

138. The entities comprising the Substance Abuse Enterprise also have varying degrees of overlapping and connected ownership, which further facilitates information gathering, sharing, and subsequent scaling of related strategies to obtain more money than the members of the Enterprise are entitled to receive from

SHULMAN BASTIAN
FRIEDMAN BUI & O'DEA LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

health plans. CodeMax also helps coordinate the other Substance Abuse Enterprise members' filling of empty treatment beds, as demonstrated by data showing that, for example, Uplift Recovery had claims for more than 40 members of Oklahoma QHPs who also were purportedly treated at another Provider within the Substance Abuse Enterprise. Connected Recovery had claims for more than 60 members of Oklahoma QHPs who also were purportedly treated at another Provider within the Substance Abuse Enterprise. And there are another dozen Provider within the Substance Abuse Enterprise that shared more than 25 purported Oklahoma residents, enrolled in (often subsidized) Oklahoma QHPs, who somehow made it 1,500 miles across the country to Southern California to seek treatment, literally driving past and flying over hundreds, if not thousands, of behavioral health treatment providers who are not members of the Substance Abuse Enterprise. The Provider members of the Substance Abuse Enterprise also have common supervising or attending doctors who are listed on claim submissions to health plans.

139. The Substance Abuse Enterprise has existed for several years, which is not only a sufficient length of time to pursue the Substance Abuse Enterprise's purpose, but, in fact, by the nature of the Substance Abuse Enterprise, its existence across multiple billing and claim submissions cycles is necessary for its effectiveness.

140. While structural separation between the Substance Abuse Enterprise and the underlying pattern of racketeering activity described herein is not required, it does exist. Both CodeMax and the Providers performed a wide variety of administrative and professional functions beyond the acts of mail and wire fraud described herein.

/ / /

/ / /

/ / /

***RICO Person***

141. CodeMax is a RICO "person" under 18 U.S.C. § 1961(3) because it is a corporation. CodeMax is associated with the Substance Abuse Enterprise as the hub and central point of information gathering, central source of information sharing, and the architect, director, and implementer of the resulting strategies to obtain more money from health plans than the health plans should pay. CodeMax verifies benefits for the patients of the Provider members of the Enterprise. CodeMax creates, submits, and tracks claims for the Provider members of the Enterprise. CodeMax substantially benefits from its operation and management of the Substance Abuse Enterprise by taking a percentage of the payments made by health plans to the Substance Abuse Enterprises' Provider members. CodeMax advertises the benefits of being a member of the Enterprise to attract additional Provider members, allowing for more information gathering and greater sharing and scaling of the information, which results in greater profits for the Enterprise's members.

***Pattern of Racketeering Activities***

142. CodeMax conducted and participated, directly and indirectly, in the conduct of the Substance Abuse Enterprise's affairs through a pattern of racketeering activity, namely, repeated violations of the federal mail and wire fraud statutes, 18 U.S.C. § 1341 and § 1343, and shared in the profits illicitly obtained through and across the Enterprise.

*18 U.S.C. § 1341 and § 1343*

143. CodeMax knowingly and intentionally designed and executed a scheme to defraud by means of false or fraudulent pretenses, representations, or promises, which involved and was furthered by delivering and receiving writings through the postal service and other interstate carriers that were designed and intended to defraud HCSC.

SHULMAN BASTIAN
FRIEDMAN BUI & O'DEA LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

144. The scheme to defraud is described in detail above, in paragraphs 106 to 132.

145. CodeMax devised and executed the scheme with the specific intent to defraud HCSC.

146. As a natural and foreseeable consequence of the scheme, CodeMax caused the interstate mailing and delivery of thousands of separate paper claims, each of which are specifically listed in Exhibit A and constitutes a separate indictable count of Mail Fraud.

147. CodeMax also used the interstate wire communication networks to test the effectiveness of aspects of its scheme, as well as to submit many other claims. In addition to the specific examples of claims submitted electronically that are identified and referenced above, Exhibit B lists examples of electronic submissions, each of which constitute an indictable act of Wire Fraud.

148. These mailings and wire activities were not isolated acts. They were related acts that formed a systematic and ongoing pattern. While the ones specifically identified here targeted a specific victim (HCSC)—and even a specific set of health plans (the Oklahoma QHPs)—the scheme described herein is durable and likely targeted other health plans, as well, but HCSC does not have line-of-sight into other insurance companies' claims. These acts also employed the same types of misrepresentations, the same methods of execution, and were all done in furtherance of the same unlawful objective (obtaining money that CodeMax and its clients and coconspirators were not rightfully entitled to).

149. The mailings and wire communications in furtherance of the scheme were continuous, occurring repeatedly over a period of at least one year, involving dozens of Providers, scores of individual patients (members of Oklahoma QHPs), and intentionally spanned multiple reimbursement cycles.

150. This constitutes a "pattern of racketeering activity" under 18 U.S.C. §§ 1961(1), and (5), in that it involved at least two acts of racketeering, the last of

which occurred within ten years of the prior act, and those acts were related and continuous.

151. This pattern of racketeering activity has both closed- and open-ended continuity. On the former account, these fraudulent claim submissions, which numbered in the thousands, occurred across a substantial period of time in 2024, involved dozens of Providers, and spanned multiple reimbursement cycles. On the latter account, these fraudulent submissions were meant, by design, to project indefinitely into the future. Indeed, there are publicly filed allegations that a very similar scheme has been executed against at least one other insurance company during 2025 and into 2026, involving many of the same Providers at issue here. The frequency of the racketeering acts, as well as the way they were carried out by CodeMax demonstrates that this conduct is a common and repeatable means of business for CodeMax and the Providers and it projects indefinitely into the future.

***RICO Injury***

152. As a direct and proximate result of the racketeering acts comprising and underlying the violation of 18 U.S.C. 1962(c), HCSC has been harmed in its business and property in excess of $20,000,000. Again, HCSC was specifically targeted for exactly the type of harm that it suffered as a result of these RICO violations. These are all funds that HCSC would not have paid but for CodeMax's deliberate exploitation of the paper-claim scheme and its ongoing concealment of the scheme from HCSC, and but for the Providers' ratification and adoption of CodeMax's efforts.

153. HCSC is entitled to recover actual damages, treble damages, costs and attorneys' fees. HCSC also seeks equitable relief of disgorgement.

**SECOND CLAIM FOR RELIEF**

**Violation of RICO 18 U.S.C. § 1962(d) (Against the Providers)**

154. HCSC incorporates by reference paragraphs 1 through 153, as if fully set forth herein.

SHULMAN BASTIAN FRIEDMAN BUI & O'DEA LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

155. In violation of 18 U.S.C. § 1962(d), each Provider conspired with CodeMax to participate in and further the aims of the Substance Abuse Enterprise through the pattern of activity described above.

156. Each Provider knew of, and agreed to participate in and in furtherance of, the same objective shared by the Substance Abuse Enterprise, namely to improperly obtain money from health plans.

157. Each Provider's respective agreement with CodeMax to violate RICO 18 U.S.C. 1962(c) is evidenced and indicated by, among other things, any of the following specific conduct: (i) contracting with and authorizing CodeMax to submit claims on behalf of the Provider, including using the Provider's NPI and TIN; (ii) adopting CodeMax's recommendations designed to obtain more money than they were entitled to receive (again, assuming for sake of argument that the claims were otherwise payable), including by increasing fake billed charges, submitting paper claims instead of electronic claims, and organizing to increase the volume of claim submissions by enrolling individuals into Oklahoma QHPs, making or arranging for payments that kept members eligible for benefits, and admitting them into the Providers' facilities; (iii) accepting and retaining reimbursement payments that each Provider knew were in excess of the amounts it was entitled to receive under the subject QHPs (again, assuming for sake of argument that the claims were otherwise payable); (iv) refusing to return those overpayments after HCSC notified the Provider it had been paid in error.

158. Each Provider undertook these actions with knowledge of, and an intent to facilitate, the Substance Abuse Enterprise and its underlying mail and wire fraud scheme, including the knowledge and intent that CodeMax would use the United States mail to submit fraudulent claims to HCSC on behalf of the Providers with the aim of receiving more than they should in benefits under the targeted QHPs and the interstate wire communication networks to submit other claims and monitor the effectiveness of the scheme, all in furtherance thereof.

Exhibit A includes at least two claim submissions that constitute predicate acts for each Provider.

159. As a direct and proximate result of these agreements and the conduct undertaken in furtherance thereof, HCSC has been injured in its business and property in excess of $20 million.

160. HCSC is entitled to recover actual damages, treble damages, costs and attorneys' fees. HCSC also seeks equitable relief of disgorgement.

**THIRD CLAIM FOR RELIEF**

**Fraud & Fraudulent Concealment (Against All Defendants)**

161. HCSC incorporates by reference paragraphs 1 through 132, as if fully set forth herein.

162. CodeMax and its Provider clients knowingly made, or knowingly caused to be made, material misrepresentations and/or omissions of material facts in claims submitted to HCSC seeking payments under the Oklahoma QHPs. These material misrepresentations included fake charges, services that were not provided (and/or could not have legally been provided), misleading or false explanations about the source of the member's admission to the facility, and prior authorization numbers that CodeMax and the Providers obtained by offering false, incomplete, or misleading information to HCSC about patients' conditions and the treatment they would receive.

163. CodeMax and the Providers knew that submitting paper claims, rather than electronic claims, would improperly result in HCSC paying significantly more than was actually due under the Oklahoma QHPs (assuming the claims were otherwise payable), but, despite this knowledge and, in fact, leveraging their exclusive knowledge of it, omitted the information and intentionally mailed paper claims to obtain more money. A duty to disclose this information arose because CodeMax and the Providers made partial disclosures in the paper claim submissions that were misleading, and because CodeMax and the Providers

leveraged their exclusive knowledge of certain facts (*e.g.*, that paper claim submissions were resulting in enormous overpayments) that were not known to HCSC.

164. With each claim they submitted to HCSC, CodeMax, on behalf of the Providers, certified that the information in the claims was true, accurate, and complete.

165. CodeMax and the Providers were aware of these material misrepresentations and non-disclosures, which were made as part of the submission of claims to HCSC for QHP benefits. CodeMax and the Providers intended to make these misrepresentations and to conceal and/or suppress material information, as described above, with the goal and purpose of enriching themselves with overpayments taken from HCSC.

166. HCSC justifiably relied on the false representations and omissions contained in the claims, as well as the purported completeness of those representations, when HCSC processed and paid the claims.

167. As a direct and proximate result of CodeMax's and the Providers' misrepresentations, omissions, and concealments, HCSC has been damaged by, among other things, paying claims that were not actually payable, whether in full or in part, under the terms of the QHPs, applicable laws, and/or regulations, in an amount to be proven at trial, but in excess of $20 million.

168. CodeMax's and the Providers' conduct amounts to malicious, oppressive, fraudulent, willful, and wanton tortious behavior, in blatant and reckless disregard for HCSC's rights, for which HCSC should recover punitive and exemplary damages in an amount that is sufficient both to punish CodeMax and the Providers and to deter other similarly situated persons from engaging in similar conduct in the future.

/ / /

/ / /

SHULMAN BASTIAN FRIEDMAN BUI & O'DEA LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

## FOURTH CLAIM FOR RELIEF

**Unjust Enrichment/Restitution (Against All Defendants)**

169. HCSC incorporates by reference paragraphs 1 through 132, as if fully set forth herein.

170. HCSC has conferred benefits upon the Defendants in the form of payments for claims that were not reimbursable, whether in whole or in part.

171. The Defendants, in turn, have unjustly accepted and retained the benefits that HCSC conferred to them, and they have done so at HCSC's expense.

172. Defendants have been unjustly enriched at HCSC's expense as a result of the fraudulent scheme, which is described above.

173. In the alternative, Defendants have been unjustly enriched because they took advantage of HCSC's mistake of fact as to the proper reimbursement amount for the paper claims the Defendants caused to be submitted to HCSC beginning in or around July 2024.

174. Defendants knew about this mistake of fact, and they took advantage of that knowledge by changing the way they submitted claims in order to obtain far more money than they knew they were supposed to receive—and far more money than they had received in the past, under normal circumstances. For their part, the Providers authorized and ratified CodeMax's submission of paper claims on their behalf, accepted and retained the improper overpayments, and declined to return those funds even after being notified by HCSC that they had been paid in error.

175. Defendants relied on unlawful and/or deceitful conduct to induce HCSC into making payments that it would never have made had it known the truth or had it been informed of the material omissions from the Providers' paper claim submissions.

/ / /

/ / /

SHULMAN BASTIAN FRIEDMAN BUI & O'DEA LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

176. Allowing the Defendants to retain the funds taken from HCSC, to which they are not entitled, would be unjust and inequitable. Those funds should be returned to HCSC in the form of restitution from the Defendants.

177. Attached to this Complaint as Exhibit C is a chart listing last six characters of the claim number for claims that are at issue for this cause of action, the Provider listed in the claim, the date HCSC received the claim, and the amount paid by HCSC.

## FIFTH CLAIM FOR RELIEF

### Money Had and Received (Against All Defendants)

178. HCSC incorporates by reference paragraphs 1 through 132, as if fully set forth herein.

179. In addition, or in the alternative, the Providers and CodeMax are liable to HCSC for money had and received.

180. As set forth above, HCSC has paid money to the Providers in the form of reimbursements for services identified in their claims, and CodeMax has retained a portion or percentage of those claim reimbursements as payment for billing and revenue cycle management services provided to its Provider clients.

181. HCSC would not have paid these claims but for the wrongful conduct of these Defendants, as described above.

182. These Defendants extracted these payments by misrepresenting or withholding the truth of the conduct that was occurring.

183. The amounts HCSC has paid the Providers and CodeMax should be returned to HCSC in good conscience.

184. Attached to this Complaint as Exhibit C is a chart listing last six characters of the claim number for claims that are at issue for this cause of action, the Provider listed in the claim, the date HCSC received the claim, and the amount paid by HCSC.

/ / /

**PRAYER FOR RELIEF**

HCSC respectfully requests that the Court enter judgment for HCSC and against the Defendants, as follows:

a. For an award of actual, consequential, treble, and punitive damages in an amount to be proven at trial;
b. Prejudgment and post-judgment interest at the highest rates allowed by law;
c. Its attorneys' fees and costs of litigation;
d. Disgorgement of all proceeds from the common scheme to defraud; and
e. Such other and further relief, in law or in equity, to which HCSC may be entitled and which the Court deems fair and just.

Dated: August 28, 2026.

**SHULMAN BASTIAN**
**FRIEDMAN BUI & O'DEA LLP**

By: *_/s/ Shane M Biornstad_*
Shane M. Biornstad

**SINTON SCOTT MINOCK & KEREW**
By: *_/s/ Benjamin D. Van Horn_*
Benjamin D. Van Horn

*Attorneys for Plaintiff*

Pursuant to Section 5-4.3.4.(a)(2)(i) of the local rules for the United States District Court for the Central District of California, I certify that that content of this document is acceptable to Benjamin D. Van Horn and that I obtained authorization from him to affix his electronic signature to this document.

*_/s/ Shane M Biornstad_*
Shane M. Biornstad